**Warren D. NICODEMUS, Trustee of the Warren D. Nicodemus Living Trust dated August 5, 1999 and John N. Morris, Norma Morris, and John H. Bell Iron Mountain Ranch Company, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees.**

v.

**UNION PACIFIC CORPORATION, a Utah corporation, and Union Pacific Railroad Company, a Delaware corporation, Defendants–Appellants.**

Nos. 02–8016, 02–8017.

United States Court of Appeals,
Tenth Circuit.

Feb. 13, 2003.

Ron Bodinson, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, (Gregory T. Wolf, Jason E. Pepe, Jerrod Westfahl, Shook, Hardy & Bacon, L.L.P., Overland Park, KS, and Joseph Rebein and Laurie Novion, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, with him on the brief), appearing for Defendants–Appellants.

Catherine M. Conlinvaux, Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P., Waltham, MA (Kim D. Cannon, Davis & Cannon, Sheridan, WY; Jordan Lewis, Siegel, Brill, Greupner, Duffy & Foster, Milwaukee, WS; and John B. Massopust, Zelle, Hofmann, Voelbel, Mason & Gette, L.L.P., Minneapolis, MN, on the brief), appearing for Plaintiffs–Appellees.

Before TACHA, ANDERSON, and EBEL, Circuit Judges.

TACHA, Chief Circuit Judge.

## I. Background

Plaintiffs-appellees are Wyoming landowners (1) Warren Nicodemus, trustee, and (2) John Morris, Norma Morris, and John H. Bell Iron Mountain Ranch Company. Defendants-appellants, Union Pacific Corporation and Union Pacific Railroad Company ("Union Pacific"), own railroad rights-of-way over plaintiffs' respective properties. Union Pacific acquired the rights-of-way at issue in this case under numerous federal land-grant statutes, dating from 1852 to 1875.

The dispute between the parties arose from agreements entered into by Union Pacific and numerous telecommunications providers, in which Union Pacific "licensed" to the telecommunications providers the right to install and maintain fiber-optic cables in the rights-of-way over plaintiffs' land. Union Pacific has received and continues to receive revenue from these license agreements.

Plaintiffs brought suit in federal court, arguing that Union Pacific's actions exceeded the scope of Union Pacific's rights under the federally-granted rights-of-way. Plaintiffs claim that Union Pacific's rights-of-way over their land are easements and that plaintiffs retain the servient tenement in the underlying land, subject only to Union Pacific's undisputed right to conduct railroad operations along the rights-of-way.[1] In the district court, Nicodemus sought various forms of relief, including: (1) damages for trespass; (2) damages for unjust enrichment; (3) an accounting and disgorgement of rents and profits; (4) a permanent injunction "ordering Union Pa-

---

**1.** We have previously construed Union Pacific's rights under section 2 of the Pacific Railroad Act of 1862, involving plaintiff Nicodemus' land, as "the grant of the right-of-way, and ... [not a] convey[ance] [of] title to the servient estate underlying the right-of-way." *Energy Transportation Systems, Inc. v. Union Pac. R.R. Co.,* 606 F.2d 934, 937 (10th Cir. 1979).

cific to cease offering, negotiating, or undertaking leases, licenses, sales, or other conveyances of any claimed interest in the [plaintiffs'] lands;" and (5) a declaratory judgment establishing, *inter alia,* that "Union Pacific's interest in the right-of-way land across which it still operates railroad cars is limited to that necessary for the operation of the railroad and does not entitle Union Pacific to use the land beyond that use which is necessary for railroad operations ... and Union Pacific's purported or asserted interest(s) in the lands owned by [plaintiffs] was terminated upon abandonment of the railroad rights of way and/or discontinuation of railroad operations on these rights of way." The Morris plaintiffs advanced similar claims, and in addition, requested the following: (1) damages for slander of title; (2) damages for inverse condemnation; and (3) "an injunction that requires Union Pacific to remove the trespassing fiber optical telecommunications cables."

Union Pacific raised numerous affirmative defenses in response to plaintiffs' respective complaints, including the existence of a "license" and the fact that "Defendants have acted within their rights and have engaged in uses of their property interests that are permitted."

On April 25, 2001 and August 31, 2001, respectively, plaintiffs sought to certify a class of landowners owning property adjacent to Union Pacific's federally-granted rights-of-way. In support of class certification, plaintiffs identified interpretation of the various federal statutes granting Union Pacific railroad rights-of-way as a predominant common issue of law.

On December 6, 2001, the district court issued an order denying class certification. *Nicodemus v. Union Pac. Corp.,* 204 F.R.D. 479, 493 (D.Wyo.2001). In that same order, the district court, *sua sponte,* dismissed plaintiffs' causes of action for lack of subject-matter jurisdiction, con-

cluding that it lacked jurisdiction under both 28 U.S.C. § 1331 and 1332. *Id.* Union Pacific then filed a motion under Rule 59(e) requesting that the district court alter or amend the portion of its judgment in which the court concluded that it lacked subject-matter jurisdiction under 28 U.S.C. § 1331. Nicodemus opposed Union Pacific's motion. The district court denied Union Pacific's motion in an order dated January 22, 2002.

Union Pacific brought this appeal, contending that the district court erred in concluding that it lacked subject-matter jurisdiction under 28 U.S.C. § 1331.

## II.  Discussion

A. *Whether Union Pacific May Appeal the District Court's Order Dismissing Plaintiffs' Causes of Action for Lack of Subject–Matter Jurisdiction.*

■ "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 333, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Thus, "[a] party generally cannot appeal from a judgment in its favor." *Amazon, Inc. v. Dirt Camp, Inc.,* 273 F.3d 1271, 1275 (10th Cir.2001) (citation omitted). In limited circumstances, however, a party who prevailed in the underlying district court proceeding may bring an appeal "so long as that party retains a stake in the appeal satisfying the requirements of Art. III." *Roper,* 445 U.S. at 333–34, 100 S.Ct. 1166. For example, where the district court's disposition grants the prevailing party only part of the relief requested, permitting the appeal might be proper. *Amazon,* 273 F.3d at 1276; *Jarvis v. Nobel/Sysco Food Servs. Co.,* 985 F.2d 1419, 1424 (10th Cir. 1993) (" 'While it is the general rule that a party cannot appeal from a judgment in

his favor, the rule is not absolute, and where a judgment gives the successful party only part of that which he seeks and denies him the balance, with the result that injustice has been done him, he may appeal from the entire judgment.' ") (quoting *Auto. Ins. Co. v. Barnes–Manley Wet Wash Laundry Co.*, 168 F.2d 381, 386 (10th Cir.1948).)

█ In this case, Union Pacific ostensibly prevailed in the district court. The district court dismissed plaintiffs' causes of action for want of subject-matter jurisdiction. On the other hand, Union Pacific did *not* challenge the district court's subject-matter jurisdiction;[2] rather, the district court considered the question *sua sponte*. Further, the district court did not afford the parties a full and fair opportunity to litigate the question of subject-matter jurisdiction.[3] Under *Amazon*, "[Union Pacific] was sufficiently aggrieved by this result, and consequently has standing to appeal." *See* 273 F.3d at 1276. Therefore, we have jurisdiction to consider Union Pacific's appeal under 28 U.S.C. § 1291.

B.  *Whether the District Court Properly Concluded That It Lacked Subject–Matter Jurisdiction over Plaintiffs' Causes of Action Under 28 U.S.C. § 1331.*

1.  *Overview*

█ "Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." *Morris v.*

*City of Hobart*, 39 F.3d 1105, 1111 (10th Cir.1994). There are two statutory bases for federal subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332 and federal-question jurisdiction under 28 U.S.C. § 1331. Federal-question jurisdiction exists for all claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case arises under federal law if its 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Morris*, 39 F.3d at 1111 (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

Thus, to find jurisdiction under 28 U.S.C. § 1331, two conditions must be satisfied. First, a question of federal law must appear on the face of plaintiff's well-pleaded complaint.[4] *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1245 (10th Cir.2001). Second, plaintiff's cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, "its resolution must necessarily turn on a substantial question of federal law." *Id.* (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). "A court examining whether a case turns on a [substantial] question of federal law [must] focus on whether Congress evidenced an intent to provide a

---

2.  Union Pacific requested only a denial of class certification in the district court.

3.  Lest this statement be taken out of context, we note that Union Pacific has now had a chance to fully and fairly litigate the question of subject-matter jurisdiction under 28 U.S.C. § 1331.

4.  Although not implicated in this case, there is one exception to the well-pleaded com-

plaint rule: complete pre-emption. In *Metropolitan Life Insur. Co. v. Taylor,* the Supreme Court recognized that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). This is a very limited exception to the general rule that a federal defense does not authorize the exercise of federal-question jurisdiction.

federal forum." *Morris,* 39 F.3d at 1111 (citation omitted).

### 2. *The well-pleaded complaint rule*

■ "[W]hether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 (citing *Franchise Tax Bd.,* 463 U.S. at 9–10, 103 S.Ct. 2841). It is well settled that "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Id.* (citing *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). Federal-question jurisdiction is not present "even if the [federal] defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. 2841.

In this case, we assume without deciding that plaintiffs' various causes of action satisfy the well-pleaded complaint rule.[5] Accordingly, we proceed to consider plaintiffs' claims under the second prong of the federal-question jurisdictional analysis.

### 3. *Plaintiffs' state-created causes of action do not give rise to federal-question jurisdiction.*

■■ The "vast majority" of federal-question jurisdiction cases fall within Justice Holmes' statement that a "'suit arises under the law that creates the cause of action.'" *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229 (quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916)). Federal-question jurisdiction also exists, however, where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. 2841; *see, e.g., Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921).[6] But the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. 3229. In considering whether a substantial federal question exists, we must exercise "prudence and restraint." *Id.* at 810, 106 S.Ct. 3229. After *Merrell Dow,* "[a] court examining whether a case turns on a [substantial] question of federal law should focus on whether Congress evidenced an intent to provide a federal forum." *Morris,* 39 F.3d at 1111.

■ In this case, plaintiffs sought damages under numerous theories, including: (1) trespass; (2) unjust enrichment; (3) slander of title; and (4) inverse condemnation. Plaintiffs also requested injunctive and declaratory relief. Union Pacific raised numerous defenses in response to plaintiffs' allegations, including (1) license and (2) legal authorization.[7]

Union Pacific argues that federal-question jurisdiction exists in this case because

---

5. The numerosity and nature of plaintiffs' claims complicate the well-pleaded complaint analysis. On the one hand, conceptually, Union Pacific's interposition of its rights under the federal land grants is in the nature of an affirmative defense. On the other hand, for at least some of plaintiffs' claims, we might need to consider Union Pacific's rights as part of plaintiffs' prima facie case, to determine the extent to which Union Pacific's rights-of-way circumscribe plaintiffs' fee interests.

6. Such cases are often referred to as "*Smith* cases," since the Supreme Court first recognized this line of cases in *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921).

7. . Specifically, Union Pacific pled the following affirmative defense: "In all respects pertinent to this action, Defendants have acted within their rights and have engaged in uses of their property interests that are permitted."

of the substantial federal interest in the railroad rights-of-way held by Union Pacific. In support of this contention, Union Pacific notes the following: (1) the federal government's subsidization of the construction of a transcontinental railroad through right-of-way grants; (2) the federal government's limited right of reverter in the railroad rights-of-way, *see* 16 U.S.C. § 1248(c);[8] and (3) the applicability of federal common law in construing the federal land-grant statutes,[9] *see N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 270–71, 23 S.Ct. 671, 47 L.Ed. 1044 (1903) (" 'The courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the states for their grants. . . .' ").

### a. There is no evidence that Congress intended to provide a federal forum.

Union Pacific amply demonstrates, and we acknowledge, the existence of a considerable federal interest in the present case. However, separation-of-power principles mandate that Congress, not the courts, decide whether the federal interest is suffi-

ciently substantial to justify the creation of federal-question jurisdiction. "[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow*, 478 U.S. at 810, 106 S.Ct. 3229. Thus, in considering the substantiality of the federal interest, "[we] focus on whether Congress evidenced an intent to provide a federal forum." *Morris*, 39 F.3d at 1111 (citing *Merrell Dow*, 478 U.S. at 812, 106 S.Ct. 3229).

■ To determine whether Congress intended to provide a federal forum, the surest indicator is whether the federal statute under consideration created a private right of action. *Rice*, 260 F.3d at 1246. In the absence of a federal private right of action, "it would flout congressional intent to provide a private federal remedy for the violation of the federal statute . . . [and] it would similarly flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 812, 106 S.Ct. 3229.

8. Under the Abandoned Railroad Right of Way Act, 43 U.S.C. § 912, enacted in 1922, land given by the United States for use as a railroad right-of-way in which the United States retained a right of reverter under *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), must be turned into a public highway within one year of the railroad company's abandonment or be given to adjacent landowners. Subsequently, Congress enacted the National Trails System Improvement Act of 1988, 16 U.S.C. § 1248(c), under which those lands not converted to public highways within one year of abandonment revert back to the United States, not adjacent private landowners. For a general overview of this statutory scheme, see *Mauler v. Bayfield County*, 309 F.3d 997, 999 (7th Cir.2002).

9. Union Pacific also asserts that state courts might be hostile to railroads and that a federal court might be better equipped to "resolve

[the] complex issues of federal statutory construction" present in this case. We disagree. The Supreme Court in *Merrell Dow* dismissed a similar argument:

> To the extent that [plaintiff] is arguing that state use and interpretation of the [federal statute] pose a threat to the order and stability of the [federal statute's] regime, [plaintiff] should be arguing, not that federal courts should be able to review and enforce state [federal statute]-based causes of action as an aspect of federal-question jurisdiction, but that the [federal statute] preempts state-court jurisdiction over the issue in dispute.

478 U.S. at 816, 106 S.Ct. 3229. Further, any "concern about the uniformity of interpretation . . . is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of action, [the] [Supreme] Court retains power to review the decision of a federal issue in a state cause of action." *Id.*

In the present case, Union Pacific does not contend that the federal land-grant statutes at issue in this case create a private right of action. Nor could it. Further, Union Pacific points to no alternative evidence of congressional intent to provide a federal forum. As the district court noted, "[there] is no suggestion that Congress intended to confer federal question jurisdiction over the construction of [federal] land grants." *Nicodemus,* 204 F.R.D. at 484. Under *Merrell Dow,* this absence is fatal. *Cf.* 478 U.S. at 814, 106 S.Ct. 3229 ("[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction.").

b. *Plaintiffs' causes of action involve subjects traditionally relegated to state law.*

■ Focusing on the nature of plaintiffs' claims bolsters our conclusion. In conducting our jurisdictional inquiry, we must consider principles of federalism. *Morris,* 39 F.3d at 1112. "We hesitate to exercise jurisdiction where the 'cause of action is a subject traditionally relegated to state law.'" *Id.* (citing *Merrell Dow,* 478 U.S. at 811, 106 S.Ct. 3229). In this case, plaintiffs' causes of action all arise under Wyoming property and tort law. "Because [trespass and unjust enrichment] actions are traditionally reserved for state courts to resolve, federalism concerns also militate against our exercise of jurisdiction here." *See id.*

c. *The Kansas Pacific case*

Union Pacific attempts to avoid this result, relying on the Supreme Court's decision in *Kan. Pac. Ry. Co. v. Atchison, Topeka & Sante Fe. R.R. Co.,* 112 U.S. 414, 5 S.Ct. 208, 28 L.Ed. 794 (1884). In *Kansas Pacific,* two railroad corporations each "claim[ed] title to the same land in Kansas under different acts of congress." *Id.* at 416, 5 S.Ct. 208. Plaintiff claimed a right to the property under 1862 and 1864 acts of Congress. Defendant claimed a right to the same property based on an 1863 act of Congress, in essence arguing that the 1863 act withdrew a certain section of property from the 1864 act under which plaintiff derived part of its rights. The Supreme Court concluded that the suit fell within the district court's statutory federal-question jurisdiction, noting that its "decision [would necessarily] depend[ ] upon the construction given to those acts." *Id.*

Union Pacific's reliance on *Kansas Pacific* is misplaced. First, Kansas Pacific did not hold that federal land-grant statutes create a private right of action in the grantee. In Kansas Pacific, the *sole* question before the Court was the reconciliation of two ostensibly conflicting federal land-grant statutes. So construed, the existence of federal-question jurisdiction is obvious. In the present case, however, we deal with federal land-grant statutes in the context of numerous state-created causes of action. Thus, federal law is but one element in plaintiffs' causes of action under Wyoming property and tort law. This is insufficient to confer federal-question jurisdiction, even assuming that the federal question is likely dispositive. *Cf. Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. 2841 (federal jurisdiction does not lie "even if both parties admit that the [federal] defense is the only question truly at issue in the case").

Second, since Kansas Pacific, the Supreme Court has construed the "arising under" jurisdictional grant in 28 U.S.C. § 1331 as conferring a more limited power than the Article III jurisdictional grant. *Merrell Dow,* 478 U.S. at 807, 106 S.Ct. 3229 (citations omitted). Although *Kansas*

*Pacific* dealt with the statutory grant of federal-question jurisdiction under the March 3, 1875, act of Congress, rather than the constitutional jurisdictional grant under Article III, the district court was likely correct in concluding that "the *Kansas Pacific* Court applied the broad constitutional 'ingredient' test in finding jurisdiction, not the more narrow 'federal remedy' test." [10] *Nicodemus,* 204 F.R.D. at 485.

Thus, while *Kansas Pacific* has some bearing in our analysis, [11] we must consider the peculiar posture of the case and the historical context in which the case was decided. [12] Here, we have already concluded that Congress did not intend to provide a federal forum under the federal land-grant statutes. *Kansas Pacific* does not fill this void. Thus, we may not exercise federal-question jurisdiction over plaintiffs' state-created causes of action.

### d. *Plaintiffs' requests for a declaratory judgment*

██ "[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd.,* 463 U.S. at 16, 103 S.Ct. 2841 (internal quotations and citations omitted). On the other hand, "[f]ederal courts have regularly taken orig-

inal jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a *coercive action* to enforce its rights, that suit would necessarily present a federal question." *Id.* at 19, 103 S.Ct. 2841 (emphasis added).

In *Franchise Tax Board,* the California Franchise Tax Board sought to recover unpaid taxes from a union-administered individual account fund. The trust fund was an "employee welfare benefit plan" and thus regulated by ERISA. The Board sought, *inter alia,* a declaratory judgment establishing that ERISA did not pre-empt the ability of the states to obtain back taxes from the trust. The Supreme Court held that the Board's declaratory judgment action did not fall within section 1331's federal-question jurisdiction. *Id.* at 27, 103 S.Ct. 2841. "[T]he State's right to enforce its tax levies [was] not of central concern to the [ERISA] statute." *Id.* at 25–26, 103 S.Ct. 2841.

In this case, both plaintiffs requested a declaratory judgment in the district court, establishing the scope of Union Pacific's rights under the numerous federal land-grant statutes. As discussed in sections II(B)(3)(a)-(c), plaintiffs' "coercive" actions do not give rise to federal-question jurisdiction. As in *Franchise Tax Board,* the

**10.** The *Kansas Pacific* Court relied on *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), and *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), both pre-statute cases.

**11.** The district court concluded that *Kansas Pacific* was a "pre-statute case." *Nicodemus,* 204 F.R.D. at 485. We disagree with this characterization. True, *Kansas Pacific* was decided in 1884, only nine years after the passage of the March 3, 1875, act of Congress, the precursor to our modern day 28 U.S.C. § 1331. Nevertheless, it appears clear that the Court in *Kansas Pacific* was considering the statutory grant of jurisdiction under the March 3, 1875, act of Congress, rather than the constitutional grant of federal-ques-

tion jurisdiction under Article III. Accordingly, we may not simply dismiss *Kansas Pacific* as inapplicable.

**12.** We consider *Kansas Pacific* mindful of the principles of separation of powers and federalism that underlie determinations of subject-matter jurisdiction, especially in the context of state-law property disputes. *Cf. Oneida Indian Nation of N.Y. State v. County of Oneida, N.Y.,* 414 U.S. 661, 683, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (Rehnquist, J., concurring) (noting the long-standing principle that federal courts must "narrowly apply[ ] the principles of 28 U.S.C. § 1331 and the well-pleaded complaint rule to possessory land actions brought in federal court.").

enforcement of Wyoming property rights was not a central concern under the federal land-grant statutes. *See id.* at 25–26, 103 S.Ct. 2841.

Similarly, a coercive action brought by Union Pacific to enforce its rights under the federal land-grant statues would fall outside of 28 U.S.C. § 1331. As the Supreme Court noted in *Townsend,* "'whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the states, subject to the condition that their rules do not impair the efficacy of the grants or the use and enjoyment of the property by the grantee.'" 190 U.S. at 270–71, 23 S.Ct. 671. Thus, because Union Pacific's rights incident to its ownership of federally-granted rights-of-way must be determined under state law, any "coercive action" brought by Union Pacific to enforce its rights would fall outside of 28 U.S.C. § 1331's jurisdictional grant, since the federal land-grant statutes contain no evidence of congressional intent to provide a federal forum. *See Merrell Dow,* 478 U.S. at 814, 106 S.Ct. 3229.

e. *Plaintiffs' requests for injunctive relief*

Finally, we briefly consider plaintiffs' respective requests for injunctive relief. Nicodemus requested a permanent injunction "ordering Union Pacific to cease offering, negotiating, or undertaking leases, licenses, sales, or other conveyances of any claimed interest in the [plaintiffs'] lands," and the Morris plaintiffs requested "an injunction that requires Union Pacific to remove the trespassing fiber optical telecommunications cables."

Here, plaintiffs sought injunctive relief in order to protect rights granted under Wyoming property and tort law. Because the requested injunctions would protect *state-created rights,*[13] and since the federal land-grant statutes at issue lack any evidence of congressional intent to provide a federal forum, we have no jurisdiction under 28 U.S.C. § 1331 to consider these claims. *See Merrell Dow,* 478 U.S. at 808, 106 S.Ct. 3229; *Morris,* 39 F.3d at 1111.

### III. Conclusion

The district court properly held that it lacked subject-matter jurisdiction under 28 U.S.C. § 1331. Accordingly, we AFFIRM.

---

**13.** We recognize that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (citations omitted). This is not such a case.